IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AIG EUROPE LIMITED., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-13-0216 |
| GENERAL SYSTEM, INC., et al. | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Presently pending before this Court is Third-Party Defendant TBB Global Logistics, Inc.'s Motion to Dismiss Counts I and II of Defendant and Third-Party Plaintiff General System Inc.'s Third-Party Complaint (ECF No. 18). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Third Party Defendant TBB Global Logistics, Inc.'s Motion to Dismiss Counts I and II of Defendant and Third-Party Plaintiff General System Inc.'s Third-Party Complaint (ECF No. 18) is GRANTED.

### BACKGROUND

This Court accepts as true the facts alleged in the third-party complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).This action began when Plaintiff AIG Europe Limited ("AIG Europe"), as subrogee of Actavis Elizabeth, LLC ("Actavis"),[1] brought suit

---

[1] The Third-Party Complaint identifies the shipper as "Actavis Elizabeth, LLC." Third Party Compl. ¶ 18. AIG Europe's original complaint, however, identifies the shipper as "Actavis, Inc." Pl.'s Compl. ¶ 2. Neither party identified nor disputed this discrepancy.

1

against Defendant and Third-Party Plaintiff General System, Inc. ("General System") under the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"),[2] 49 U.S.C. § 14706, for General System's alleged loss of a tractor trailer filled with pharmaceuticals. Subsequently, General System filed a Third-Party Complaint against Third Party Defendants TBB Global Logistics ("TBB Global"), National Insurance Agency, Inc. ("National"), and Marine MGA, Inc. ("Marine MGA") asserting breach of contract and negligence claims. As only TBB Global has moved to dismiss the Third-Party Complaint, the Court's summary of the facts is limited to those factual allegations pertaining to TBB Global.

Specifically, General System alleges that TBB Global, a transportation brokerage service, arranged for General System to transport shipments for TBB Global's clients. Third Party Compl. ¶¶ 9-11, ECF No. 12. General System obtained insurance for its cargo, with a limit of $100,000 per occurrence, and alleges that TBB Global "agreed" to refrain from arranging transportation of any shipment exceeding that insurance coverage. *Id.* ¶¶ 12, 14.

On October 11, 2011, TBB Global instructed General System to pick up a shipment of pharmaceuticals from Actavis Elizabeth, LLC ("Actavis") and deliver it to UPS in Louisville, Kentucky. *Id.* ¶ 15. TBB Global did not inform General System that the value of the shipment exceeded the $100,000 limit of General System's insurance coverage or that the

---

[2] Congress passed the Carmack Amendment in 1906 in order to create "a nationally uniform system of liability for common carriers shipping goods within the stream of interstate commerce." *Brightstar Int'l Corp. v. Minuteman Int'l*, No. 10-C-230, 2011 U.S. Dist. LEXIS 114149, at *5 (E.D. Ill. Oct. 4, 2011). While the Carmack Amendment relieves carriers from the burden of differing state regulations, "it also facilitates claims by shippers, requiring them to make only a prima facie case in order to shift the burden to the carrier to prove that it was not negligent and that the damage was caused by an event excepted by the common law." *5K Logistics, Inc. v. Daily Exp., Inc.*, 659 F.3d 331, 335 (4th Cir. 2011).

shipment contained controlled substances. *Id.* ¶¶ 16-17. A driver for General System picked up the shipment that same day. *Id.* ¶ 18. In route, the driver stopped at a truck stop to purchase cigarettes around 11 p.m. *Id.* ¶ 19. When he emerged from the store, both the truck and trailer were gone. *Id.* The truck was eventually located, but the goods had been removed from the trailer and were not recovered. *Id.* ¶ 20. Actavis made a claim against its insurance carrier, AIG Europe, for the loss of the goods, and one of the terms for payment of the claim was that Actavis subrogated its rights to AIG Europe. *Id.* ¶ 21.

After settlement of Actavis' claim, AIG Europe filed the pending action in this Court on January 22, 2013 against General System. *See generally* Pl.'s Compl., ECF No. 1. Subsequently, General System sought leave to file a third party complaint. *See* Mot. Leave File Third Party Compl., ECF No. 10. On June 26, 2013, this Court granted the Motion, and Global System's Third Party Complaint (ECF No. 12) against TBB Global and the other third-party defendants was filed that same day.[3] TBB Global moved to dismiss the Third Party Complaint for improper impleader, failure to state a claim, and improper venue. *See generally* Third Party Def. TBB Global's Mot. Dismiss Counts I and II (hereinafter, "TBB's Mot. Dismiss"), ECF No. 18. The other Third-Party Defendants did not join the Motion and have answered the Third-Party Complaint.[4]

---

[3] Specifically, General System has named National Insurance Agency, Inc. and Marine MGA, Inc. as the other third-party defendants. In Counts III and IV, General System asserts negligence and breach of contract claims against those parties.

[4] Subsequently, AIG Europe filed a Motion for Leave to File Amended Complaint (ECF No. 31) that sought to add TBB Global as a defendant to AIG Europe's original action. That Motion is granted by separate order. In essence, AIG Europe alleges that TBB Global knew of General System's insurance limit and did nothing to procure additional insurance and that TBB Global failed to instruct General System that Actavis and the insurance policy required two drivers to be assigned to the load. See Pl.'s Mem. Supp. Mot. File Am. Compl., at 2, ECF No. 31-1.

STANDARD OF REVIEW

Rule 14(a) of the Federal Rules of Civil Procedure governs the process by which a defendant may assert claims against parties not yet joined to the action. Specifically, Rule 14(a)(1) states that:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

FED. R. CIV. P. 14(a)(1). When a third-party claim has been improperly brought, "[a]ny party may move to strike [it]."[5] FED. R. CIV. P. 14(a)(4).

ANALYSIS

Under Rule 14(a) of the Federal Rules of Civil Procedure, a defendant may, as a third-party plaintiff, bring suit against "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). In order to implead a third party under Rule 14(a), this Court has previously held that the third-party plaintiff's claim must be "derivative" of the plaintiff's claim. *L'Occitane, Inc. v. Tran Source Logistics, Inc.*, No. WMN-09-cv-2499, 2010 WL 761201, at *3 (D. Md. March 2, 2010) (quoting *Watergate Landmark Condominium Unit Owners' Assoc. v. Wiss, Janey, Elstner Assoc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987)). Such

---

[5] Despite the title of TBB's Global Motion, it is clear that TBB Global has moved to strike the third party complaint under Rule 14(a)(4). *See* Third Party Def. TBB Global's Mem. Supp. Mot. Dismiss Counts I and II (hereinafter, "TBB's Mem. Supp. Mot. Dismiss"), at 2, ECF No. 19 ("TBB [Global's] Motion to Dismiss . . . has been brought pursuant to Federal Rule of Civil Procedure 14(a)(4); Federal Rule of Civil Procedure 12(b)(6), failure to state a claim upon which relief may be granted; and Federal Rule of Civil Procedure 12(b)(3) for improper venue."). Even if TBB Global had only invoked Rule 12(b)(6), this Court would have construed TBB's Motion as a motion to strike with respect to the arguments concerning the propriety of the third-party complaint under Rule 14.

derivative liability usually arises in cases involving indemnification, joint tortfeasors, or contribution. *See id.* ("'Typically, proper third party claims involve one joint tortfeasor impleading another, an indemnitee impleading an indemnitor, or a secondarily liable party impleading one who is primarily liable'" (quoting *Watergate*, 117 F.R.D. at 578)); *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1446 (3d ed.) ("The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory." (footnotes omitted)). Related claims—even those arising out of the same transaction or occurrence—do not automatically satisfy the derivative requirement. *Id.* at *4. In addition, a third-party complaint is not appropriate where a defendant merely attempts to deflect blame onto another party:

> [A] third party claim is not appropriate where the defendant and putative third party plaintiff say, in effect, "It was him, not me." Such a claim is viable only where a proposed third party plaintiff says, in effect, "If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part (one-half, if a joint tortfeasor) of anything I must pay plaintiff."

*Watergate*, 117 F.R.D. at 578.

In assessing third-party claims, the district court is afforded wide discretion. *See L'Occitane, Inc.*, 2010 WL 761201, at *5; *see also Johnson v. M.I. Windows and Doors, Inc.*, No. 2:11-cv-167, 2012 WL 1015798, at *2 (D.S.C. March 23, 2012). Relevant factors include the introduction of unrelated issues or the undue complication of the original suit. *See id.*; *see also Hancock v. Chicago Title Ins. Co.*, 263 F.R.D. 383, 393 (N.D. Tex. 2009), *aff'd sub nom. Benavides v. Chicago Title Ins. Co.*, 10-10136, 2011 WL 1057567 (5th Cir. Mar. 23, 2011), ("In deciding a

5

motion under Rule 14, courts can consider the prejudice to the parties, complication of trial issues, likelihood of delay, and timeliness.").

General System's Third Party Complaint raises two separate claims against TBB Global. First, General System asserts a claim for breach of contract, premised upon TBB Global's alleged breach of the agreement not to arrange for shipments of goods that exceeded $100,000 in value. Second, General System makes a claim for negligence based upon TBB Global's alleged breach of the duty to advise General System that the value of the load exceeded $100,000. In General System's view, its third-party claims satisfy Rule 14(a) for the simple reason that General System is seeking to "transfer partial liability" to TBB Global. *See* Gen. Sys. Opp'n, at 6, ECF No. 26.

Despite General System's contentions, its claims are not derivative of AIG Europe's main claim. The primary suit is an action under the Carmack Amendment for General System's loss of Activas' goods during transport. General System's third-party claims, however, raise issues pertaining to the procurement of a carrier and compliance with an independent contract between General System and TBB Global.[6] Thus, General System's claims, as alleged in the Third-Party Complaint, are not derivative of the main claim because there is no causal relationship between the wrongs asserted in AIG Europe's main claim (the loss of goods) and the TBB Global's alleged failure to disclose the value of the goods.[7] *See*

---

[6] There is no claim that the alleged contract between General System and TBB Global creates any right for General System to seek indemnification from TBB Global.

[7] While General System's second count asserts a claim for negligence, General System has failed to identify any legal support for the proposition that a transportation broker has a duty (above and beyond that created by the terms of the contract) to inform the carrier of the value or content of the load or to determine the extent of a carrier's insurance. *Cf. Government of the United Kingdom of Great Britain and Northern Ireland v.*

6

*Tetra Tech EC/Tesoro Joint Venture v. Sam Temples Masonry, Inc.*, No. 10-1597, 2011 WL 1048964 (D.S.C. 2011) (denying third-party claim relating to breach of subcontract to the extent that those breaches did not cause or contribute to breach of separate subcontract at issue in the main claim); *cf. E.I. DuPont de Nemours and Co. v. Kolon Industries, Inc.*, 688 F. Supp. 2d 443, 463-64 (E.D. Va. 2009) (holding that third party complaint raising breach of contract and contribution claims was not derivative for purposes of Rule 14 because "separate and independent contracts serve as the basis for the claims").[8]

Moreover, only General System's need for relief—rather than its right to recover—from TBB Global will *automatically* arise if and when General System is found liable to AIG Europe. *See Se. Mortg. Co. v. Mullins*, 514 F.2d 747, 750 (5th Cir. 1975) ("The common thread running through [cases where impleader was denied], and our own, is that the right or duty alleged to have been violated in the third party complaint does not emanate from the main claim but exists wholly independent of it. In each, the nexus with the principal action is not

---

*Northstar Servs., Ltd., Albert E. Cantwell and Panalpina, Inc.*, 1 F. Supp. 2d 521, 526-27 (D. Md. 1998). As such, it appears General System's negligence claim is merely a contract claim dressed up in the guise of a tort claim.
[8] General System explains the relationship between its liability and TBB Global's liability accordingly:

> Because TBB failed to fulfill its contractual duties to GSI and booked the transport of goods beyond the value of GSI's insurance coverage, GSI unknowingly transported goods valued beyond its coverage. Thus, because TBB created the liability by arranging transport, GSI seeks to transfer partial liability to TBB for the damages sought by plaintiff.

General System's Opp'n, at 9, ECF No. 26. However, General System has made no allegations explaining how this breach actually *caused* General System's liability with respect to the loss of goods. Instead, General System merely alleges a "but for" relationship between TBB Global's actions and the *amount* of General System's liability. This simple "but-for" causation is not sufficient to satisfy the derivate requirement of Rule 14(a). *See Vinmar Overseas, Ltd. V. OceanConnect, LLC*, 2012 U.S. Dist. LEXIS 169351, at *13-*18 (S.D. Tex. Nov. 29, 2012) (finding impleader improper where only connection between main claim and third-party claim was "but-for" causation and the defendant/third-party plaintiff's intent to use the proceeds of any judgment on the third-party complaint to pay any award on the main claim).

7

that it establishes the right to relief, but merely the need for relief."). Therefore, General System's third-party complaint raises separate and independent claims that are not cognizable under Rule 14(a). *Accord L'Occitane, Inc.*, 2010 WL 761201, at *4 ("Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." (quoting *Laughlin v. Dell Financial Servs., L.P*, 465 F. Supp. 2d 563, 567 (D.S.C. 2006))).

However, even if General System's claims were derivative of AIG Europe's Carmack Amendment action, this Court would find, in its discretion, that impleader is inappropriate under the current circumstances. The issues raised in the Third-Party Complaint are different than those raised in AIG Europe's straight-forward Carmack Amendment claim, involving different types of duties and different sources of law. *See U.S. Commodity Futures Trading Comm'n v. Calvary Currencies LLC*, No. DKC-2004-10212, 2005 WL 263902, at *2 (D. Md. Feb 2, 2005) ("[A] lack of similarity between the issues and evidence required to prove the main and third-party claims may be sufficient to warrant the dismissal of an impleaded party." (quoting *Dishong v. Tidewater Orthopaedic Assoc.*, 219 F.R.D. 382, 385 (E.D. Va. 2003))).

More importantly, under the terms of the contract between General System and TBB Global, disputes between the parties are to be litigated in the "Pennsylvania federal or state courts."[9] *See* TBB/Trucker Contract § 11, ECF No. 18-1 at 4. In the very recent case of *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, --- S. Ct. ---, 2013 WL 6231157 (Dec. 3, 2013), the Supreme Court of the United States clarified

---

[9] Notably, General System does not dispute the validity or applicability of this contractual provision. Instead, General System's argument focuses on whether the provision may be enforced at this time.

8

how district courts are to treat forum selection clauses. The Court noted that venue is not "improper" simply because the suit was filed in a court other than that specified in the forum selection clause. *Atl. Marine Constr.*, 2013 WL 6231157, at *8-*9. However, the Court also held that, in the context of motions to transfer pursuant to 28 U.S.C. § 1404, "a proper application of § 1404(a) requires that a forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at *9 (internal quotation marks omitted). Thus, when faced with a forum selection clause, the district court must ignore the private interest factors normally assessed on a § 1404 motion for transfer[10] because parties who have designated a particular forum to litigate their disputes have "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at *12. Instead, the district court should look solely to the public interest factors, which "include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at *11 n.6.

Here, TBB Global argues that venue is improper due to the forum selection clause in the contract. *See* TBB Global Mot. Dismiss, at 26. As *Atlantic Marine Construction* clearly indicates, this argument is meritless. Nevertheless, this Court must afford the parties' choice of forum substantial weight. Accordingly, this Court finds that the forum selection clause

---

[10] These private interest factors "include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Atl. Marine Constr.*, 2013 WL 6231157, at *11 n.6 (internal quotation marks omitted).

9

presents a substantial reason for denying impleader of TBB Global at this time.[11] To force TBB Global to litigate in this forum despite the explicit forum selection clause and with no showing that the public interest favors adjudication in Maryland would defy the Supreme Court's recent clear instructions regarding venue.

As this Court resolves TBB Global's Motion on the basis of Rule 14, this Court does not reach the other issues raised by the parties' briefs. In particular, this Court makes no ruling at this time with respect to the preemptive effect of the Carmack Amendment, 49 U.S.C. § 14706, and the Interstate Commerce Commission Termination Act,[12] 49 U.S.C. § 14501, in this case.

CONCLUSION

For the reasons stated above, Third Party Defendant TBB Global Logistics, Inc.'s Motion to Dismiss Counts I and II of Defendant and Third-Party Plaintiff General System Inc.'s Third-Party Complaint (ECF No. 18) is GRANTED.

---

[11] Under the circumstances of this case, transfer would of course be improper: this Court has already found that the third-party claims against TBB Global were improperly brought, and the parties have not analyzed the public interest factors in their briefs.

However, this Court notes that Plaintiff AIG Europe has filed a Motion for Leave to File Amended Complaint (ECF No. 31) that would add TBB Global as a defendant to the main action. No opposition has been filed by the presently existing Defendants, and that Motion has now been granted by separate order. Accordingly, the effect of the forum selection clause on the venue of the main action will be addressed in the context of any motions filed by TBB Global in the main action. In the event of any cross-claims filed by co-Defendants, the issue of derivative liability would disappear under Rule 13(g)'s more lenient standard.

[12] The Interstate Commerce Commission Termination Act of 1995 was a comprehensive act addressing the economic regulation of interstate transportation. The Act included a broad preemption clause for ground transportation. *See* 49 U.S.C. § 14501(c)(1).

A separate Order follows.

Dated:       December 16, 2013            /s/                                    

                                          Richard D. Bennett
                                          United States District Judge