IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

AIG EUROPE LIMITED,           *

    Plaintiff,             *

       v.                *        Civil Action No. RDB-13-0216

GENERAL SYSTEM, INC., et al.,   *

    Defendants.         *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Presently pending before this Court are Defendant TBB Global Logistics, Inc.'s Motion to Dismiss Count II of Plaintiff AIG Europe Limited FAK Chartis Europe S.A.'s Amended Complaint (ECF No. 45) ("TBB Global's Motion to Dismiss") and Third-Party Defendants' Motion to Strike and Dismiss the Third-Party Complaint and/or for Summary Judgment (ECF No. 50) ("Third-Party Defendants Motion to Strike and Dismiss").[1]  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, Defendant TBB Global Logistics, Inc.'s Motion (ECF No. 45) is GRANTED and Third-Party Defendants' Motion to Strike and Dismiss the Third-Party Complaint and/or for Summary Judgment (ECF No. 50) is GRANTED.

## BACKGROUND

This Court accepts as true the facts alleged in the Amended Complaint and the Third-Party Complaint.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  The facts

---

[1] Also pending is the Defendant TBB Global Logistics, Inc.'s Motion to Dismiss Co-Defendant General System, Inc.'s Cross-Claim (ECF No. 53).  That Motion has not yet been fully briefed and is not addressed in this Memorandum Opinion.

of this case are set forth in this Court's Memorandum Opinion of December 16, 2013 (ECF No. 37), and are generally not in dispute.  Pl.'s Opp'n to TBB Global's Mot. to Dismiss 2, ECF No. 47.  General System alleges that TBB Global, a transportation brokerage service, arranged for General System to transport shipments for TBB Global's clients.  Third Party Compl. ¶¶ 9-11, ECF No. 12.  General System obtained insurance for its cargo, with a limit of $100,000 per occurrence, and alleges that TBB Global "agreed" to refrain from arranging transportation of any shipment exceeding that insurance coverage.[2]  *Id.* ¶¶ 12, 14.

On October 11, 2011, TBB Global instructed General System to pick up a shipment of pharmaceuticals from Actavis Elizabeth, LLC ("Actavis") in Elizabeth, New Jersey and deliver it to Louisville, Kentucky.  *Id.* ¶ 15.  TBB Global did not inform General System that the value of the shipment exceeded the $100,000 limit of General System's insurance coverage or that the shipment contained controlled substances.  *Id.* ¶¶ 16-17.  A driver for General System picked up the shipment that same day.  *Id.* ¶ 18.  On the way from New Jersey to Kentucky, the driver stopped at a truck stop in Pennsylvania to purchase cigarettes around 11 p.m.  *Id.* ¶ 19.  When he emerged from the store, both the truck and trailer were gone.  *Id.*  The truck was eventually located, but the goods had been removed from the trailer and were not recovered.  *Id.* ¶ 20.  Actavis made a claim against its insurance carrier, Plaintiff AIG Europe Limited ("AIG Europe"), for the loss of the goods, and Actavis subrogated its rights to AIG Europe.  *Id.* ¶ 21.

After settlement of Actavis' claim, AIG Europe, acting as a subrogated plaintiff, initiated the pending action in this Court by filing a one-count Complaint against General

---

[2] This fact is in dispute, but does not affect the legal analysis of the pending Motions.

System.  *See generally* Pl.'s Compl., ECF No. 1.  Subsequently, General System sought leave to file a third-party complaint.  *See* Mot. Leave File Third-Party Compl., ECF No. 10.  This Court granted the Motion, and General System filed a Third-Party Complaint (ECF No. 12) against TBB Global, National Insurance Agency, Inc. ("National Insurance"), and Marine MGA Inc. ("Marine MGA").  In the Third-Party Complaint, General System asserted claims for negligence and breach of contract against TBB Global in Counts I & II, and National Insurance and Marine MGA in Counts III & IV.  TBB Global moved to dismiss the Third-Party Complaint for improper impleader, failure to state a claim, and improper venue.  *See generally* Third-Party Def. TBB Global's Mot. Dismiss Counts I and II, ECF No. 18.  The other Third-Party Defendants, National Insurance and Marine MGA, did not join that Motion and answered the Third-Party Complaint.  Subsequently, AIG Europe filed a Motion for Leave to File Amended Complaint (ECF No. 31) that sought to add TBB Global as a Defendant to the original action.

This Court granted TBB Global's Motion to Dismiss Counts I and II of Defendant and Third-Party Plaintiff General System Inc.'s Third-Party Complaint (ECF No. 18), holding that General System's claims against TBB Global were not derivative of AIG Europe's claim against General System.  However, this Court granted AIG Europe's motion for leave to file an Amended Complaint (ECF No. 39) naming TBB Global as a Defendant.  After AIG Europe filed the Amended Complaint, TBB Global filed the subject Motion to Dismiss (ECF No. 45).  Subsequently, the remaining Third-Party Defendants, National Insurance and Marine MGA, filed their Joint Motion to Strike and Dismiss the negligence

and breach of contract claims against them in Counts III and IV of the Third-Party Complaint (ECF No. 50).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999))).

The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679.  "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted).

In addition, Rule 14(a) of the Federal Rules of Civil Procedure governs the process by which a defendant may assert claims against parties not yet joined to the action.  Specifically, Rule 14(a)(1) states that:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1).  When a third-party claim has been improperly brought, "[a]ny party may move to strike [it]." Fed. R. Civ. P. 14(a)(4).

## ANALYSIS

AIG Europe's claim against TBB Global is preempted by federal law and this Court declines to exercise supplemental jurisdiction over the claim.   Therefore, TBB Global's Motion to Dismiss will be granted.   Furthermore, because any claims General System may have against Third-Party Defendants National Insurance and Marine MGA are not derivative of AIG Europe's claim against General System, the Third-Party Defendants' Motion to Strike and Dismiss will be granted.

## I.    TBB Global's Motion to Dismiss

In Count II of the Amended Complaint, AIG Europe asserts a claim for negligence against TBB Global.  Am. Compl. ¶ 17.  In essence, AIG Europe alleges that TBB Global knew of General System's insurance limit and did nothing to procure additional insurance and that TBB Global failed to instruct General System that Actavis and the insurance policy required two drivers to be assigned to the load.[3]  Even taking AIG Europe's allegations as true, TBB Global's Motion must be granted as a matter of law because AIG Europe's claim against TBB Global is preempted by federal law.

### A.  Preemption Under the Interstate Commerce Commission Termination Act

The Plaintiff's claim against TBB Global is expressly preempted by the Interstate Commerce Commission Termination Act, 49 U.S.C. § 14501 ("ICCTA").  Enacted in 1995, the ICCTA includes a broad preemption clause, which provides:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

---

[3] Count II of the Amended Complaint echoes the negligence claim that General System asserted against TBB Global in the Third-Party Complaint.  As noted, this Court dismissed that claim.

49 U.S.C. § 14501(c)(1).  As this Court noted in *Mastercraft Interiors, Ltd. v. ABF Freight Sys.*, 284 F. Supp. 2d 284, 286 (D. Md. 2003), "Congress specifically intended to codify the broad scope of the preemption provision [of the ICCTA] accorded by the Supreme Court in [a case concerning the Airline Deregulation Act, *Morales v. Trans World Airlines*, 504 U.S. 374 (1992)]."  The phrase "related to" in the preemption provision encompasses all state laws "having a connection with" rates, routes, or service.  *Morales*, 504 U.S. at 383.  Additionally, a state common law claim amounts to an "other provision having the force and effect of law" under the statute.  *Mastercraft Interiors, Ltd.*, 284 F. Supp. 2d at 287-88.  If the connection of the common law claim to prices, routes, and service is "tenuous, remote, or peripheral," however, the claim is not preempted.  *Morales*, 504 U.S. at 383; *Cowan Sys., LLC v. Ferguson*, No. ELH-12-0984, 2012 WL 3025131, at *3 (D. Md. July 23, 2012).

AIG Europe alleges that TBB Global is a motor carrier property broker.  A broker is "a person, other than a motor carrier . . . that as a principal, or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by a motor carrier for compensation."  49 U.S.C. § 13102(2).  A motor carrier, on the other hand, is "a person providing motor vehicle transportation for compensation."  *Id.* § 13102(14).  As the United States Court of Appeals for the Fourth Circuit noted in *5K Logistics, Inc. v. Daily Express, Inc.*, there is no overlap under federal law between "carriers" and "brokers."  659 F.3d at 335-36.  TBB Global only arranged for General System to pick up the goods directly from Actavis, and never handled, controlled, or took possession of the goods itself.  Therefore, accepting the allegations in the Amended Complaint as true, TBB Global is not a carrier, but a broker.

As a broker, TBB Global is expressly within the purview of the ICCTA.  49 U.S.C. §

14501(c)(1) (State may not enforce any other provision having the force and effect of law

related to any broker).  The claim at issue states that TBB Global negligently failed to advise

General System that the shipment's value exceeded the insurance covering it, and negligently

failed to select a different motor carrier that had higher insurance coverage.  The claim

clearly relates to the service provided by a broker.  *Mastercraft Interiors, Ltd.*, 284 F. Supp. 2d

at 286.  In addition, because Count II is a Maryland common law negligence claim, it

involves an "other provision having the force and effect of law" under the ICCTA

preemption provision.  *Id.* at 287-88.  Therefore, § 14501(c)(1) applies and the claim is

preempted.

    B.  Preemption Under the Carmack Amendment

Alternatively, TBB Global also moves to dismiss on the basis that AIG Europe's

claim in Count II is impliedly preempted by the Carmack Amendment to the Interstate

Commerce Act of 1887, 49 U.S.C. § 14706, which governs the liability of "carriers."

Originally enacted in 1906, the Carmack Amendment created "a national scheme of carrier

liability for goods damaged or lost during interstate shipment under a valid bill of lading."

*Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704 (4th Cir. 1993).  The statute imposes

"something close to strict liability" on carriers, *5K Logistics, Inc. v. Daily Express, Inc.*, 659 F.3d

331, 335 (4th Cir. 2011) (citations omitted), but only for "the actual loss or injury to the

property."  49 U.S.C. § 14706(a)(1).

Congress may impliedly preempt state law by "creating a scheme of federal regulation

so pervasive as to make reasonable the inference that Congress left no room for the States to

supplement it." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996).   The

Carmack Amendment is meant to "supersede all state regulation" on the subject of cargo

carriage. *Adams Am. Exp. Co. v. Croninger*, 226 U.S. 491, 505-06 (1913); *5K Logistics, Inc.*, 659

F.3d at 335.   Therefore, the Carmack Amendment preempts state law claims "arising from

failures in the transportation and delivery of goods." *Smith v. United Parcel Service*, 296 F.3d

1244, 1246 (11th Cir. 2002).   Indeed, under that wide scope of preemption, "only claims

based on conduct that is separate and distinct from the delivery, loss of, or damage to goods

escape preemption." *Smith*, 296 F.3d at 1248-49.

   As noted, TBB Global is a broker under federal law.   While the Carmack

Amendment clearly preempts negligence claims against <u>carriers</u>, *Se. Exp. Co. v. Pastime

Amusement Co.*, 299 U.S. 28, 29 (1936) (per curiam), the preemption question is less settled

with respect to state law claims made against <u>brokers</u>.   *Compare Atlas Aerospace LLC v.

Advanced Transp., Inc.*, No. JWL-12-1200, 2013 WL 1767943, at *2-3 (D. Kan. Apr. 24, 2013)

(breach of contract claim against broker is outside the scope of the Carmack Amendment),

*with Ameriswiss Tech., LLC v. Midway Line of Ill.*, 888 F. Supp. 2d 197, 203-04 (D.N.H. 2012)

(negligence claim against broker preempted), *and York v. Day Transfer Co.*, 525 F. Supp. 2d

289, 301 (D.R.I. 2007) (negligence claim against broker preempted).

   However, the Fourth Circuit has provided some guidance on this question in its

opinion in *5K Logistics, Inc.*  In that case, 5K Logistics, Inc.—a broker—filed a third-party

complaint against a carrier, alleging breach of contract and also seeking indemnity and

contribution under § 14706(b) of the Carmack Amendment.   After holding that 5K

Logistics, Inc. could not take advantage of the apportionment remedy under § 14706(b),[4] the Fourth Circuit noted ways in which 5K Logistics, Inc. could have protected its interests. The Court suggested that the 5K Logistics, Inc. "could have negotiated for terms assigning it any claims [the customer seeking a carrier for its goods] would have under the Carmack Amendment, leaving the dispute between the [the customer] and 5K as a breach of contract action, which is not preempted by the Carmack Amendment inasmuch as 5K is a broker, not a carrier." *5K Logistics, Inc.*, 659 F.3d at 338. This passage suggests that, in the Fourth Circuit's view, the Carmack Amendment does not preempt all state claims against brokers.

While this Court finds the Fourth Circuit's analysis instructive, this Court also notes that this discussion with respect to brokers appeared in *dicta*. Moreover, the parties have cited to conflicting authorities with respect to the preemptive effect of the Carmack Amendment. As such, this Court declines to rule on the issue of Carmack Amendment preemption in this case because this Court has already determined that the ICCTA preempts AIG Europe's claim against TBB Global.

C. Supplemental Jurisdiction

Having concluded that AIG Europe's Maryland common law negligence claim against TBB Global is preempted by federal law, this Court declines to exercise supplemental jurisdiction over the claim.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

---

[4] The Fourth Circuit also held that 5K Logistics, Inc.'s claims against the carrier should have been dismissed as time barred. *See 5K Logistics, Inc.*, 659 F.3d at 336-37.

controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  This

Court has discretion to decline the exercise of supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it had original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c); *Ramsey v. Sawyer Prop. Mgmt. of Md., LLC*, 948 F. Supp. 2d 525, 537 (D. Md.

2013) (noting that supplemental jurisdiction is a doctrine of discretion (citing *United Mine*

*Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))).

        In this case, the state law negligence claim substantially predominates over the

Carmack Amendment claim that forms the basis for this Court's jurisdiction.  Based on the

facts alleged in the Amended Complaint, TBB Global acted only as a broker.  As the

Plaintiff argues, "[t]he real issue is whether TBB had a duty to go beyond just selecting some

carrier to move AIG's goods."  Pl.'s Opp'n 4, ECF No. 47.  The Carmack Amendment is a

strict liability statute with a limited number of statutory defenses.  On the other hand, a

common law negligence claim will involve establishing what, if any, duty TBB Global owed

to AIG Europe, as well as whether TBB Global's conduct constituted a breach of any duty.

These inquiries are totally separate from whether General System is strictly liable to AIG

Europe pursuant to the Carmack Amendment.  The issues thus raised by the common law

negligence claim substantially predominate over the Carmack Amendment claim.[5]

---

[5] This Court notes that the presence of preemption issues may be a factor in whether a court should exercise jurisdiction.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Although preemption doctrine is implicated here, this factor does not outweigh the state law claim's predomination over the federal claim in this case.  Therefore, this Court will not exercise supplemental jurisdiction over the negligence claim against TBB Global in Count II of the Amended Complaint.

Therefore, this Court, in its discretion, declines to exercise supplemental jurisdiction over the claim against TBB Global.  Accordingly, Count II will be dismissed as against TBB Global.

Having determined that the negligence claim is preempted and declined to exercise supplemental jurisdiction over the claim, this Court need not address the additional arguments raised in TBB Global's Motion as to the statute of limitations under Pennsylvania law, or the forum selection clause and issues of venue under 28 U.S.C. § 1404, that may be implicated in the "Subscriber Agreement" contract between General System and TBB Global.  Accordingly, Count II of the Amended Complaint will be dismissed.

## II.     Third-Party Defendants' Joint Motion To Strike And Dismiss

Third-Party Defendants National Insurance and Marine MGA move to strike or dismiss the Third-Party Complaint.  Pursuant to Rule 14 of the Federal Rules of Civil Procedure, a defendant may assert a claim against a party not yet joined to the action "who is or may be liable to [the defendant] for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).  When a third-party claim has been improperly brought, "[a]ny party may move to strike [it]."  Fed. R. Civ. P. 14(a)(4).  This Court has previously held that the third-party plaintiff's claim must be "derivative" of the plaintiff's claim.  *See* Mem. Op. TBB's Mot. Dismiss Third-Party Compl., ECF No. 37[6] (citing *L'Occitane, Inc. v. Tran Source Logistics, Inc.*, No. WMN-09-2499, 2010 WL 761201, at *3 (D. Md. March 2, 2010) (quoting *Watergate Landmark Condominium Unit Owners' Ass'n v. Wiss, Janey, Elstner Assocs., Inc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987))).  Such derivative liability usually arises in cases involving

---

[6] This Court opinion on this earlier motion in this case, although unpublished, is now available on Westlaw under the citation *AIG Europe Ltd. v. Gen. Sys., Inc.*, No. RDB-13-0216, 2013 WL 6654382 (D. Md. Dec. 16, 2013).

indemnification, joint tortfeasors, or contribution. *See id.* ("'Typically, proper third party claims involve one joint tortfeasor impleading another, an indemnitee impleading an indemnitor, or a secondarily liable party impleading one who is primarily liable'" (quoting *Watergate*, 117 F.R.D. at 578)); *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1446 (3d ed.) ("The secondary or derivative liability notion is central and thus impleader has been successfully utilized when the basis of the third-party claim is indemnity, subrogation, contribution, express or implied warranty, or some other theory." (footnotes omitted)). Related claims—even those arising out of the same transaction or occurrence— do not automatically satisfy the derivative requirement. *Id.* at *4. In addition, a third-party complaint is not appropriate where a defendant merely attempts to deflect blame onto another party:

> [A] third party claim is not appropriate where the defendant and putative third party plaintiff say, in effect, "It was him, not me." Such a claim is viable only where a proposed third party plaintiff says, in effect, "If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part (one-half, if a joint tortfeasor) of anything I must pay plaintiff."

*Watergate*, 117 F.R.D. at 578.

In assessing third-party claims, the district court is afforded wide discretion. *See L'Occitane, Inc.*, 2010 WL 761201, at *5; *see also Johnson v. M.I. Windows and Doors, Inc.*, No. 2:11-cv-167, 2012 WL 1015798, at *2 (D.S.C. March 23, 2012). Relevant factors include the introduction of unrelated issues or the undue complication of the original suit. *See id.*; *see also Hancock v. Chicago Title Ins. Co.*, 263 F.R.D. 383, 393 (N.D. Tex. 2009), *aff'd sub nom. Benavides v. Chicago Title Ins. Co.*, 10-10136, 2011 WL 1057567 (5th Cir. Mar. 23, 2011) ("In deciding a

motion under Rule 14, courts can consider the prejudice to the parties, complication of trial issues, likelihood of delay, and timeliness.").

This Court held that General System's claims against TBB Global were not derivative of the claims by AIG Europe against General System.   Mem. Op. TBB's Mot. Dismiss Third-Party Compl. 6-8, ECF No. 37.   Global System acknowledges that the same reasoning underlying this Court's dismissal of the Third-Party Complaint as against TBB Global also applies to National Insurance and Marine MGA.   General System merely urges this Court to exercise its discretion under Rule 14 to implead the remaining Third-Party Defendants into this case to "further the purpose of [Rule 14] and avoid a multiplicity of lawsuits."   Pl.'s Opp'n to Joint Mot. To Strike 3, ECF No. 51.   AIG Europe's claims against National Insurance and Marine MGA are separate and independent from the claims against Global System and impleader is improper.   Accordingly, for the same reasons that this Court dismissed the Third-Party Complaint against TBB Global, dismissal is also warranted as to the claims against National Insurance and Marine MGA.

<u>CONCLUSION</u>

For the reasons stated above, Defendant TBB Global Logistics, Inc.'s Motion to Dismiss Count II of Plaintiff AIG Europe Limited's Amended Complaint (ECF No. 45) is GRANTED, and AIG Europe's claim against Defendant TBB Global Logistics, Inc. is dismissed without prejudice.   Additionally, Third-Party Defendants National Insurance Agency, Inc. and Marine MGA, Inc.'s Motion to Strike and Dismiss the Third-Party Complaint and/or for Summary Judgment (ECF No. 50) is GRANTED, and they are dismissed from this case

A separate Order follows.

Dated:        July 22, 2014                    _____/s/_____
                                               Richard D. Bennett
                                               United States District Judge